NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-461                                       Appeals Court

JOHANNA ORTIZ  vs.  JOHN MORRIS & others.[1]


No. 19-P-461.

Suffolk.     February 5, 2020. - April 27, 2020.

Present:  Hanlon, Wendlandt, & Englander, JJ.


State Police.  Immunity from suit.  Civil Rights, Immunity of
     public official.  Federal Civil Rights Act.  Practice,
     Civil, Civil rights, Summary judgment, Affidavit.  Probable
     Cause.



Civil action commenced in the Superior Court Department on
January 23, 2015.

The case was heard by Robert L. Ullmann, J., on a motion
for summary judgment, and a motion for relief from judgment was
considered by him.


Veronica J. White for the plaintiff.
Daniel J. Moynihan for John Morris.


WENDLANDT, J.  In this matter, which comes to us on a

motion for summary judgment on the basis of a State police

officer's qualified immunity, there can be no doubt that a

_____

[1] Commonwealth of Massachusetts and State Police
Superintendent Colonel Timothy P. Alben (now retired).

tragic mistake occurred.  The following facts are undisputed.

The plaintiff, Johanna Ortiz, was arrested for trafficking in

cocaine -- a crime that she did not commit.  Her only "crime,"

as laboratory results would show conclusively (albeit

belatedly), was carrying beauty products in her luggage as she

returned to the United States from the Dominican Republic.

Ortiz then spent thirty-seven days incarcerated before

prosecutors dropped the ill-founded allegations against her.

The nightmare no doubt has scarred her.[2]

In 2015, Ortiz brought the present civil rights action in

the Superior Court against State Trooper John Morris, the

Commonwealth, and State Police Superintendent Colonel Timothy P.

Alben (now retired).  Following discovery, Morris moved for

summary judgment on the basis of qualified immunity.[3]  A Superior

Court judge allowed the motion.

On appeal, Ortiz contends that summary judgment was

improperly granted because there existed a dispute of material

fact whether Morris knew, prior to arresting her, that field

---

[2] In her complaint, Ortiz explained that she suffered severe emotional distress, depression, and reputational harm.  She also incurred financial costs in connection with, inter alia, defending against false charges and medical expenses.

[3] The Commonwealth separately moved for summary judgment, which was allowed on the basis of sovereign immunity.  The parties agreed to dismiss Ortiz's claim against Alben.  Ortiz appeals from only so much of the ensuing judgment as pertains to Morris.

tests performed on the beauty products by the United States Customs and Border Protection (CBP) agents did not, in fact, show a positive result for the presence of cocaine. In support of this allegation, Ortiz relied on her affidavit, in which she stated that Morris heard a CBP agent relay that the field tests were negative. Because Ortiz's affidavit was not based on personal knowledge, it was not the type of admissible evidence required on summary judgment. The only admissible evidence showed that Morris had a reasonable basis to believe that he had probable cause to arrest Ortiz; accordingly, we affirm the judgment in favor of Morris on the basis of qualified immunity.

Background. We set forth the facts in the light most favorable to Ortiz, the nonmoving party. See Kennie v. Natural Resource Dep't of Dennis, 451 Mass. 754, 759 (2008).

In January 2013, Ortiz traveled to the Dominican Republic and, while there, purchased shampoo and hair conditioner products. On her return to Logan International Airport (airport), she proceeded through customs. She was selected by CBP agents for a secondary screening and detained in a room with her luggage. CBP agents then seized twenty-three bottles and two canisters of beauty products from her luggage and subjected them to a canine sniff and field tests. Thereafter, Morris, who was assigned to assist CBP at the airport, was summoned to the customs processing area.

On his arrival, CBP agents informed Morris that a CBP drug-sniffing canine alerted to the odor of drugs in Ortiz's beauty products and that the products had nonfactory, clear plastic seals around the opening.  He also personally observed the field tests performed by the CBP agents and was told by the CBP agents that the field tests were positive for the presence of cocaine in the beauty products.  Morris learned that Ortiz was carrying $660 in a white envelope.[4]  Morris subjected the currency to his drug-sniffing canine; it, too, alerted to the presence of drugs.  Ortiz was questioned by officers, including by Morris.  She denied any connection to or knowledge of any drugs or drug operation; instead, she told officers that the beauty products were simply shampoo and conditioner.

Morris arrested Ortiz.  He filed an application for a criminal complaint accompanied by a police report in the East Boston Division of the Boston Municipal Court Department; it alleged that Ortiz was trafficking in over ten kilograms of liquid cocaine based on information he gathered from CBP agents (the CBP canine alert, the field tests, and the manner in which the items had been resealed and repackaged), Morris's experience with the manner in which cocaine is trafficked, and his canine's alert on the currency carried by Ortiz.  The complaint issued,

---

[4] Separately, she had approximately twenty-three dollars in her wallet.

and bail was set at $200,000.  Unable to post bail, Ortiz was incarcerated.  Ortiz was released thirty-seven days later, when prosecutors entered a nolle prosequi on the charges against her because laboratory tests were unable to show any controlled substances in the beauty products; they were, as Ortiz had claimed from the onset, simply shampoo and conditioner.

According to Ortiz, at some unidentified time during the approximately nine hours she was detained in customs, she heard a female CBP agent state that she could not understand why Ortiz was being detained, given that the field tests were negative for drugs.  In interrogatory answers and during her deposition, Ortiz did not identify Morris as one of the officers to whom the female CBP agent had made the statement.  Instead, Ortiz explained that the statement was made outside her "line of sight," in a room other than the room where Ortiz was being detained.  She stated that she did not know which of her interactions with law enforcement involved Morris, stating only that Morris was the author of the police report leading to her arrest.

Responding to questions asking how Ortiz knew that Morris was involved (and the extent of Morris's involvement) with her detention and arrest, Ortiz testified at her deposition that, following her release, she went to the airport.  While there, Morris apologized to her, stating that he had made a mistake and

that he believed that the field tests must have produced a false positive reading because they had been reused.  Ortiz explained that this postrelease encounter triggered a specific memory of Morris being among the officers who questioned her while she was in customs and that she believed he was "in charge" because she "saw . . . people . . . asking him for advice or something." Although it is undisputed that Morris arrested Ortiz, Ortiz testified that she was unable to identify which officer effected the arrest.  She also testified that she was unable to differentiate between CBP agent and State trooper uniforms.

This suit followed.  As against Morris, Ortiz alleged violations of her civil rights, pursuant to G. L. c. 12, § 11I; malicious prosecution; violations of her constitutional due process and equal protection rights, pursuant to 42 U.S.C. § 1983; and negligence.  Following discovery, Morris moved for summary judgment on the basis of qualified immunity.

In opposition, Ortiz submitted an affidavit stating, for the first time, that Morris was among the officers to whom the female CBP agent stated that the field tests were negative. Because the affidavit did not set forth any basis indicating that Ortiz was competent to testify whether Morris heard the CBP agent's statement, the judge allowed summary judgment in favor of Morris on the basis of qualified immunity.  After judgment entered for Morris, Ortiz filed a motion pursuant to Mass. R.

Civ. P. 60, 365 Mass. 828 (1974). The judge denied that motion, and Ortiz filed a notice of appeal from the judgment and the order denying her rule 60 motion.

Discussion. "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Summary judgment "make[s] possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved" (citation omitted). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 715 (1991).

Where the movant has supported the motion for summary judgment by admissible evidence, a nonmoving party may not rest on unsupported allegations; instead, the nonmoving party must come forward with admissible evidence setting forth specific facts showing that there is a genuine issue for trial. See Madsen v. Erwin, 395 Mass. 715, 721 (1985). See also Mass. R. Civ. P. 56 (e). Relevant to the present case, where an affidavit "does not appear to have been made of the affiant's own personal knowledge, nor does it appear affirmatively that

the affiant would have been competent to testify to any of the critical matters at trial," it must be disregarded in passing on the motion for summary judgment.  Stanton Indus., Inc. v. Columbus Mills, Inc., 4 Mass. App. Ct. 793, 794 (1976).  Additionally, "[a] party cannot create a disputed issue of fact [simply] by . . . contradicting by affidavit statements previously made under oath at a deposition."  Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 58 (1997), quoting O'Brien v. Analog Devices, Inc., 34 Mass. App. Ct. 905, 906 (1993).  Our review of the judge's allowance of Morris's motion is de novo. Regis College v. Weston, 462 Mass. 280, 284 (2012).

Public officials have the same protection for violations of the Massachusetts Civil Rights Act, G. L. c. 12, § 11I, as they have under Federal law for violations of 42 U.S.C. § 1983.  See Duarte v. Healy, 405 Mass. 43, 46 (1989).  Under § 1983, officers performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether an officer is immune "turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time [the action] was taken" (quotations and citation omitted).  Anderson v.

Creighton, 483 U.S. 635, 639 (1987). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018), quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

In the context of a warrantless arrest, a reasonable belief of probable cause held by an arresting officer, even if ultimately mistaken, entitles the officer to qualified immunity.[5] See Hunter v. Bryant, 502 U.S. 224, 228-229 (1991). Because probable cause, by its nature, "turn[s] on the assessment of probabilities in particular factual contexts and cannot be reduced to a neat set of legal rules" (quotation omitted), qualified immunity will protect an officer in the absence of an

---

[5] The existence of probable cause also bars Ortiz's claims for malicious prosecution and negligence. See Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 405-406 (2002) ("Generally, where there is probable cause to arrest, the plaintiff has failed to meet the probable cause element of malicious prosecution"); Cachopa v. Stoughton, 72 Mass. App. Ct. 657, 665 (2008), quoting Gildea v. Ellershaw, 363 Mass. 800, 820 (1973) ("Public officials are . . . entitled to qualified immunity in the sense that they are not liable for negligence or other error in the making of a discretionary decision within the scope of their authority, so long as they act 'in good faith, without malice and without corruption'"). Ortiz does not appeal from the dismissal of her equal protection claim; in any event, the record is devoid of any evidence of discriminatory animus. See Commonwealth v. Lora, 451 Mass. 425, 437 (2008) (defendant has initial burden to present evidence raising at least reasonable inference of impermissible discrimination).

identified body of relevant case law that clearly establishes the answer with respect to probable cause. Wesby, 138 S. Ct. at 590.

Here, the undisputed record shows that Morris was told by CBP agents that Ortiz had twenty-three containers and two canisters in her luggage, the CBP canine had alerted to the presence of narcotics in these items,[6] and field tests were positive, erroneously as it turned out, for the presence of cocaine in these items. See Bilida v. McCleod, 211 F.3d 166, 174-175 (1st Cir. 2000) (plausible information from fellow officers "support[ed] qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists [e.g. a warrant,

_____

[6] Ortiz contends that, in the absence of information regarding the CBP canine's reliability, Morris's reliance on this information was unreasonable. See Florida v. Harris, 568 U.S. 237, 248 (2013) ("If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause"). Of course, "law enforcement units have their own strong incentive to use effective training and certification programs, because only accurate drug-detection dogs enable officers to locate contraband without incurring unnecessary risks or wasting limited time and resources." Id. at 247. We need not reach the question whether, in view of this incentive, Morris could reasonably believe that the CBP canine was reliable. Here, the remaining information relied on by Morris supports his reasonable belief that he had probable cause to arrest Ortiz, as set forth supra.

probable cause, exigent circumstances]").  Morris also had been told that the containers lacked a factory seal and instead had a clear plastic covering;[7] and, he knew from his experience and the experience of other agents and officers that cocaine was often packaged in this manner.  Morris knew that Ortiz had an envelope containing $660, separate from her wallet, which (based on his experience and training) he believed to be consistent with the value of a drug courier's fee for transporting the volume of cocaine suspected to be held within the containers.  Finally, Morris's own canine alerted to the presence of drugs on the currency.[8]  Together, this information provided probable cause to believe that Ortiz had committed the crime of trafficking in cocaine.

---

[7] Ortiz maintains that reliance on this information was unreasonable because one of the containers (apparently photographed by Ortiz's counsel following Ortiz's release) showed part of a factory seal still affixed to it.  However, Ortiz does not set forth any evidence that the remaining containers and canisters did not present as reported to Morris by the CBP agents or, more importantly, that Morris knew (or reasonably should have known) that the reported state of the seals was false.

[8] Ortiz maintains that Morris should have known that his canine's alert was "meaningless" because a large percentage of all currency has come into contact with drugs.  See United States v. United States Currency, $30,060, 39 F.3d 1039, 1042 (9th Cir. 1994) ("greater than seventy-five percent of all circulated currency in Los Angeles is contaminated with the residue of cocaine or other controlled substances").  As set forth supra, here, there was more.

Ortiz contends, however, that other information should have caused Morris to doubt the veracity of the information provided to him by the CBP agents. Specifically, her affidavit avers that Morris heard a CBP agent report that the field tests were negative. However, in an interrogatory answer, Ortiz stated that the statement was made outside her line of sight (because she was detained in a separate room). At her deposition, Ortiz testified that she was unable to distinguish between CBP and State trooper uniforms. She also explained that she recalled Morris only because he apologized to her at the airport following her release, triggering a memory that Morris was among the officers who questioned her. She testified that she was so distraught the day of her interrogation and arrest that she could not recall any details, including who had performed the field tests, who had conducted the canine sniffs, or even who arrested her. Together with her interrogatory answer, this testimony showed Ortiz lacked personal knowledge whether Morris heard the statement and, indeed, whether the statement was made by a CBP agent at all. Because it is not based on personal knowledge, the statement in the affidavit is not admissible evidence.[9]  See Stanton Indus., Inc. 4 Mass. App. Ct. at 794.

---

[9] For this reason, the present matter is distinguishable from Manuel v. Joliet, 137 S. Ct. 911 (2017) (§ 1983 claim based on wrongful arrest and pretrial detention where, despite knowledge of negative field tests, officers arrested plaintiff

See also Mass. R. Civ. P. 56 (e).  Furthermore, her claim that she had personal knowledge that Morris heard the agent's statement conflicts with her deposition testimony and prior discovery response.  See <u>Hanover Ins. Co</u>., 42 Mass. App. Ct. at 58.  Accordingly, summary judgment was proper.[10]

<u>Judgment affirmed</u>.

<u>Order denying rule 60 motion affirmed</u>.

---

and then falsely reported positive field and laboratory tests in support of criminal complaint).

[10] Ortiz also maintains that Morris should have known that he lacked probable cause because he reasonably should have known that the shampoo and conditioner did not contain marketable cocaine.  Ortiz presented expert testimony that packaging cocaine together with products like shampoo and conditioner renders it unmarketable and thus a trained officer would have known that the substance was unlikely to be cocaine.  At best, this testimony suggests that Morris could have been more skeptical about the field test results.  It does not, however, require Morris to have ignored the reported drug test results, his own observations and experiences, the consistency between the cash Ortiz carried and the volume of cocaine suspected to be contained in her luggage, and Morris's canine's alert.  Certainly, Ortiz cites to no clearly established law requiring an officer to ignore evidence of cocaine because the mixture rendered it less than marketable.