COMMONWEALTH *vs.* MARIA BEALS.

Essex.   April 4, 1989. — August 8, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Kidnapping. Parent and Child,* Custody of minor. *Minor,* Custody. *Statute,*
    Construction. *Words,* "Without lawful authority."

A parent who took her minor children from the other parent and removed
    them from the Commonwealth at a time when there were no pending
    proceedings concerning either the marriage or the custody of the children
    could not be convicted of "parental kidnapping" under G. L. c. 265,
    § 26A. [552-556]

COMPLAINT received and sworn to in the Lynn Division of
the District Court Department on January 15, 1987.

On transfer to the jury session of the Salem Division, a
motion to dismiss was heard by *Joseph A. Furnari,* J., and a
question of law was reported by him to the Appeals Court.
The Supreme Judicial Court granted a request for direct review.

*Nancy Benotti* for the defendant.

*Joseph B. Green,* Assistant District Attorney (*Margaret J.
Perry,* Assistant District Attorney, with him) for the Common-
wealth.

ABRAMS, J. The defendant, Maria Beals, is charged with
kidnapping her two sons and taking them out of Massachusetts,
a felony under G. L. c. 265, § 26A (1988 ed.). A judge in
the District Court, acting in accord with Mass. R. Crim. P.
34, 378 Mass. 905 (1979), reported a question concerning the
applicability of G. L. c. 265, § 26A, to the facts of the case
before him.[1] The essence of the judge's question is whether

---

[1] The text of the judge's reported question read as follows: "Can a parent
of minor children be convicted of parental kidnapping under G. L. c. 265,
§ 26A, where, as set forth in the Statement of Agreed Facts, that parent
took the child from the other parent while the couple was legally married
and before there was any court order dealing with custody, or must this
Court grant the defendant's motion to dismiss the complaint?"

the terms of G. L. c. 265, § 26A, are sufficiently specific to criminalize the act of a parent's taking his or her children out of the Commonwealth permanently or for a prolonged period in the absence of any custody order concerning the children. We granted a joint application for direct appellate review. We conclude that G. L. c. 265, § 26A, does not criminalize the act of a parent's taking his or her children out of the Commonwealth permanently or for a prolonged period in cases in which no court proceeding or custody order exists. Therefore, the defendant's motion to dismiss the complaint should be granted.

We summarize the agreed facts. The defendant and her husband, George P. Beals, have two sons: George D. Beals, who is five years old, and Daniel Beals, who is three. On January 4, 1987, without notifying her husband, the defendant left the family home in Lynn with the two children. At the time that the defendant took the children, there were no court proceedings concerning either the custody of the children or the defendant's marriage to the children's father. Ten days later, George Beals obtained, pursuant to G. L. c. 209A, an ex parte order granting him temporary custody of the two children. The defendant had no knowledge of this custody order. A police officer unsuccessfully attempted to serve the defendant with the order and summons. The officer noted on the return of service that the whereabouts of the defendant and her two sons were unknown. On January 15, 1987, a criminal complaint and arrest warrant issued against the defendant, charging her with a felony violation of G. L. c. 265, § 26A. A Federal criminal warrant also issued against the defendant in May, 1987.

After the defendant was arrested in Puerto Rico and charged with being a fugitive from justice in Massachusetts, she returned to Massachusetts. The defendant stipulates that the Commonwealth is able to prove beyond a reasonable doubt that she took her children outside the Commonwealth, and that she intended to hold them there permanently or for a protracted period.

General Laws c. 265, § 26A, provides in relevant part: "Whoever, being a relative of a child less than eighteen years old, *without lawful authority*, holds or intends to hold such a

child permanently or for a protracted period, or takes or entices a child from his lawful custodian . . . shall be punished by imprisonment in the house of correction for not more than one year or by a fine of up to one thousand dollars, or both. Whoever commits [this] offense . . . by taking or holding said child outside the commonwealth . . . shall be punished by a fine of not more than five thousand dollars, or by imprisonment in the state prison for not more than five years, or by both such fine and imprisonment" (emphasis added).

The question before us is whether the phrase "without lawful authority," within the meaning of G. L. c. 265, § 26A, includes the action of a parent who takes his or her children from the other parent prior to a court proceeding. The Commonwealth argues that the phrase "without lawful authority" necessarily includes within its definition the act of a parent who takes his or her children away from the other parent by leaving with the children even if the parent does not act in violation of an existing custody order. The defendant argues that the phrase "without lawful authority" fails to provide "fair warning" that the action of a parent in these circumstances constitutes a crime. We agree with the defendant's argument.

The Commonwealth advances several arguments to support the proposition that the statutory language, "without lawful authority," includes the taking of children by a parent even before the existence of a court order. We consider each argument in turn.

The Commonwealth contends that the common law definition of "lawful authority" was authority based on "the sovereign authority of the State, either by a previous order, emanating from the government, or . . . expressly sanctioned by the authority of State." *Commonwealth* v. *Blodgett*, 12 Met. 56, 58 (1846). See 3 W. Blackstone, Commentaries *127 (where a person takes custody of another person without a court order, warrant, or other express grant or authority from the State he may be liable for false imprisonment). From this, the Commonwealth concludes that the defendant acts "without lawful authority" if she takes exclusive custody of the child without express permission of the courts. We do not agree.

"Words and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing with the same or similar subject matter as that with which they were associated at common law." *Comey* v. *Hill*, 387 Mass. 11, 15 (1982), quoting 2A C. Sands, Sutherland Statutory Construction § 50.03, at 277-278 (4th ed. 1973). Although the Commonwealth is correct that, at early common law, lawful restraint was generally limited to restraint that was authorized expressly by the State, such lawful restraint could also include instances where the conduct, although not expressly authorized, was nonetheless justified by circumstances. 3 W. Blackstone, Commentaries *127. See *Commonwealth* v. *Blodgett, supra* at 88-89. For centuries, a parent has had the authority to control a child in a reasonable manner. 1 W. Blackstone, Commentaries *452. See *Commonwealth* v. *Brasher*, 359 Mass. 550, 557 (1971). Therefore, at least between a parent and child, a parent does not need an express grant of authority to engage reasonably in the taking of his or her child. Because a parent generally has lawful authority to take his or her children out of the Commonwealth, a parent does not fall within the literal words of the statute as long as he or she does not violate a custody order.

Our interpretation of the statute is consistent with the traditional rule that neither parent, in the absence of a custody order altering his or her natural custody rights to a child, commits the crime of kidnapping by taking exclusive possession of the child. See, e.g., *Hunt* v. *Hunt*, 94 Ga. 257, 259 (1894); *State* v. *Dewey*, 155 Iowa 469, 471 (1912); *State* v. *Elliott*, 171 La. 306, 311 (1930); *State* v. *Huhn*, 346 Mo. 695, 700 (1940); *Burns* v. *Commonwealth*, 129 Pa. 138, 145-146 (1889). In decisions specifically involving parental kidnapping under the predecessors of the current parental kidnapping statute, we indicated that a court order was required to *divest* a parent of "lawful authority" to control his or her child, even where the parent's assertion of control over a child had the effect of excluding the child's other parent. See *Commonwealth* v. *Bresnahan*, 255 Mass. 144, 151 (1926); *Commonwealth* v. *Nickerson*, 5 Allen 518, 526 (1863).

The Commonwealth correctly notes that currently the law of Massachusetts recognizes both parents' equal rights to custody of their children. See, e.g., *Silvia* v. *Silvia*, 9 Mass. App. Ct. 339, 341 (1980); G. L. c. 208, § 31 (1988 ed.). From that principle, the Commonwealth asserts that the legislative intent is to include parents within the terms "without lawful authority." We do not agree. "This is a criminal law, and criminal statutes are to be construed strictly. The court cannot extend or enlarge a statute to create an offence which is not created by the language of the enactment." *Commonwealth* v. *Alexander*, 185 Mass. 551, 553 (1904). See *Commonwealth* v. *Callahan*, *ante* 200, 205 (1989). Any "uncertainty that results from a literal reading of the statute is to be resolved in favor of the defendant." *Commonwealth* v. *Clinton*, 374 Mass. 719, 721 (1978).

Current principles of law concerning both parents' right to custody does not convert the statutory words "without lawful authority" into a new term which means without the express authority of the courts or the other spouse. To the contrary, the principle that, prior to a court order, both parents have lawful custody of their children, supports the result we reach. Because parents generally act with lawful authority in taking their children, the plain meaning of the phrase "without lawful authority" does not encompass parents' taking their children in the absence of a custody order to the contrary.

The Commonwealth asserts that interpreting G. L. c. 265, § 26A, as not making criminal a precustody parental taking would leave a parent in the position of the defendant's husband with no means of locating the children or obtaining an adjudication of custody rights. The Commonwealth argues that such an interpretation would not address the mischief the statute was intended to remedy. See *Commonwealth* v. *Graham*, 388 Mass. 115, 119 (1983). Contrary to the Commonwealth's assertion, however, access to a panoply of State and Federal programs designed to locate missing children does not depend on whether the child is missing because of a criminal taking. Even in the absence of a criminal taking, parents may make use of Federal and State statutory schemes to locate a missing

child,[2] and have the child returned to Massachusetts.[3] Further, other statutes which are noncriminal already deter to some degree precustody parental takings.[4] We note that the defendant's husband, in obtaining legal custody of his sons after the taking, made use of G. L. c. 209A, § 7, a statute meant to protect abused spouses and children. In light of all the other statutory remedies available to parents whose children have been taken, the Legislature may have decided not to use the extreme sanctions of the criminal law in dealing with precustody parental kidnapping.

We recognize that policy reasons may support prohibiting one parent from taking possession of his or her children to the

---

[2] See, e.g., G. L. c. 22A, §§ 1, 4 (1988 ed.) (law enforcement officials must "immediately undertake to locate" a child "whose whereabouts cannot be determined by the person responsible for such child's care"); 42 U.S.C. § 663(a) (1982) (granting a State agency access to information compiled by the Federal Parent Locater Service). See also Missing Children's Assistance Act, Pub. L. 98-473, 98 Stat. 2125 (1984), codified at 42 U.S.C. §§ 5771-5773 (Supp. III 1985) (establishing national resource center to aid in the location and recovery of "missing children"); Federal Missing Children Act of 1982, Pub. L. 97-292, codified at 28 U.S.C. § 534(a)(3), (4) (1982) (requiring Federal Bureau of Investigation to "acquire, collect, classify, and preserve any information which would assist in the location of any missing person" and to "exchange such records and information" with State officials).

[3] Once a missing parent and child are located, it is likely that the missing parent could be provided notice and an opportunity to be heard which would be sufficient to satisfy the jurisdictional requirements of the Massachusetts Child Custody Jurisdiction Act (MCCJA) and the Federal Parental Kidnapping Prevention Act (PKPA). See G. L. c. 209B, §§ 5, 6 (1988 ed.); 28 U.S.C. § 1738A(e) (1982). Provided that other "home State" requirements of the MCCJA and PKPA are met, see G. L. c. 209B, § 2; 28 U.S.C. § 1738A(c), a parent bereft of his or her child therefore may obtain a Massachusetts decree granting him or her custody of the child which other States must enforce. 28 U.S.C. § 1738A(a). See J. Atkinson, Modern Child Custody Practice § 3.27, at 170 (1986) (noting that application of the PKPA's rules of home State jurisdiction would require, in most cases, that custody litigation be conducted in the State from which the child was taken).

[4] See, e.g., Uniform Child Custody Jurisdiction Act (UCCJA) § 8(a), 9 U.L.A. 251 (1988); G. L. c. 209B, § 7 (a) (ii) (a court has discretion to decline jurisdiction in a custody dispute if the parent seeking jurisdiction has engaged in wrongful conduct); UCCJA § 8(c), supra; G. L. c. 209B, § 7 (e) (6) (7) (a court may assess attorneys' fees or order other sanctions if a parent wrongfully seeks jurisdiction).

exclusion of the other. Parents in judicial proceedings are presumed to have an equal right to custody of their child. G. L. c. 208, § 31. See *Silvia* v. *Silvia, supra* at 340-341. We have interpreted these rights to mean that both parents share in the obligations and decisions involved in bringing up their children. See *Commonwealth* v. *Lobo*, 385 Mass. 436, 446 (1982) ("the support and maintenance of children should be shared by those responsible for bringing them into the world"); *Felton* v. *Felton*, 383 Mass. 232, 233-235 (1981) (neither parent has right unilaterally to decide child's religious upbringing). However, in matters in which "[t]he apparent policy considerations on each side of the conflict are very strong, and very compelling. . . . [T]he Legislature is the appropriate forum for the resolution of [the] dispute." *Negron* v. *Gordon*, 373 Mass. 199, 207 (1977). "The public policy of the Commonwealth in the creation of crimes is not for this court to determine, but for the Legislature." *Commonwealth* v. *Corbett*, 307 Mass. 7, 8 (1940). As we read G. L. c. 265, § 26A, the Legislature has not made criminal the act of a parent taking his or her children prior to any court proceeding.

A parent who has taken his or her children from the other parent before there was any court proceeding cannot be convicted of parental kidnapping under G. L. c. 265, § 26A. The defendant's motion to dismiss should be granted.

*So ordered.*