Louis PICCONE, et al., Plaintiffs

v.

Angelo McCLAIN, et al., Defendants.

No. C.A. 09–cv–30146–MAP.

United States District Court,
D. Massachusetts.

July 2, 2010.

Austin M. Joyce Reardon, John K. Vigliotti Reardon, Joyce & Akerson, P.C.,

Worcester, MA, Nancy Frankel Pelletier, David S. Lawless, Robinson Donovan, PC, Kerry David Strayer, Commonwealth of Massachusetts Western Massachusetts Division, Springfield, MA, for Defendants.

Scott A. Katz, John G. Swomley, Eric B. Tennen, Swomley & Associates, Boston, MA, for Plaintiffs.

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS TO DISMISS

PONSOR, District Judge.

### I. INTRODUCTION.

Plaintiffs Louis and Elena Piccone ("Plaintiffs"), filed suit against seven employees of the Massachusetts Department of Children and Families ("DCF"), Angelo McClain, Lynne Reber, Joan Mazzeo, Heather Nietsche, Irene Woods, Lance LaPointe, and Janet Rice (collectively, the "DCF Defendants"); against John W. Bartels, Jr., the Chief of Police for the Town of Dalton, John M. Marley, a police officer with the Dalton Police Department, and the Town of Dalton (collectively, the "Dalton Defendants"); and against Richard Smith, a police officer with the Massachusetts State Police. In their twenty-nine count complaint, Plaintiffs allege state and federal due process violations, abuse of process, and violations of the Fourth Amendment to the United States Constitution.[1] Plaintiffs seek damages under 42 U.S.C. § 1983; Mass. Gen. Laws ch. 12, § 11I; and pursuant to common law. They also seek injunctive and declaratory relief. (Dkt. No. 1.) In the motions before the court, the DCF Defendants move to dismiss the claims directed against them under Fed.R.Civ.P. 12(b)(6) (Dkt. No. 8),

as do the Dalton Defendants (Dkt. No. 18), and Defendant Smith (Dkt. No. 15). For the reasons described below, the motion by the DCF Defendants will be allowed, the motion by the Dalton Defendants will be allowed in part and denied in part, and the motion by Defendant Smith will be denied.

### II. FACTS.

Viewed in the light most favorable to Plaintiffs, the relevant facts are as follows.

On Friday, January 11, 2008, Defendant Reber received a call in her capacity as intake screener for DCF. The caller alleged that Plaintiffs' youngest child ("Child C") had made some remarks indicating that Plaintiff Louis Piccone (hereinafter, "Plaintiff" or "Mr. Piccone") had touched him inappropriately. The caller was not a witness to the child's statements. The caller did not mention Plaintiff's other two children, his wife, Elena Piccone (hereinafter, "Mrs. Piccone"), or any charge of neglect. Nevertheless, Defendant Reber included in her intake report a charge of neglect against all three children by both parents and designated the complaint an emergency. (Dkt. No. 1 ¶¶ 25–34.) Defendant Mazzeo, the program manager, reviewed and approved the intake report. (Id. ¶ 36.)

That same day, on the basis of the intake report, Defendant Nietsche, a social worker, went to Plaintiffs' home with another social worker and two Dalton police officers and requested an interview with Child C. (Id. ¶¶ 37, 46.) Plaintiff agreed to the interview but requested that it be videotaped. Defendant Nietsche denied the request and told Plaintiff that DCF would take immediate physical custody of

---

1. The complaint also alleges that the searches at issue in their Fourth Amendment claims also violated Article 14 of the Massachusetts Declaration of Rights. However, at oral argument Plaintiffs conceded that the factual allegations do not support state search-and seizure claims. Thus, only the federal search-and-seizure claims are addressed here.

all three children unless Plaintiff either permitted an unrecorded interview or left the house for the weekend. At some point in the evening, Defendant Nietsche spoke with Defendant Wood, who spoke with Defendant LaPointe, both of whom approved this course of action. Plaintiff left the house.

On Monday, January 15, 2008, DCF personnel notified Plaintiff that DCF had scheduled a Sexual Assault Intervention Network ("SAIN") interview for January 16, 2008. (*Id.* ¶¶ 84–85.) On the afternoon of January 15, 2008, Mrs. Piccone and the three Piccone children left Massachusetts and went to stay with Mr. Piccone's parents in New York city. (*Id.* ¶ 89.) Mrs. Piccone remained in Massachusetts.

On Wednesday, January 16, 2008, Defendant Nietsche spoke with the Piccone children's regular pediatrician, Dr. Alan Kulberg, who informed Defendant Nietsche that he had never had any concerns that any of the Piccone children had been abused. At approximately 1:30 p.m. on the same day, Plaintiffs' attorney notified Defendant Nietsche that Mrs. Piccone and the Piccone children were visiting family in New York.

At approximately 3:00 p.m. on the same day, Defendant Nietsche filed an *ex parte* emergency care and protection petition (the "Petition") with the Massachusetts Juvenile Court, seeking to have DCF take custody of all three Piccone children. Defendant Rice, a DCF supervisor, cosigned the supporting affidavit, and Defendant LaPointe, the DCF Area Program Manager, approved the course of action. The Juvenile Court granted the Petition and awarded custody of all three children to DCF. (*Id.* ¶ 102.)

Nine days later, on January 25, 2008, Defendant Chief of Police Bartels went to the Piccones' home. He rang the bell and knocked, but there was no answer. He then let himself into the house and conducted a warrantless search.

On January 27, 2008, Defendant Police Officer Marley arrived at the Piccones' home, where he spoke with John Nolan, a former client of Plaintiff. Nolan (who is not related to Plaintiffs) falsely stated that he was Plaintiff's brother-in-law and that he consented to Defendant Marley's search of Plaintiffs' home. Defendant Marley entered and searched Plaintiffs' home.

Members of the Dalton Police Department may also have conducted other warrantless searches of Plaintiffs' home. The complaint alleges, "Upon information and belief, on various dates the Dalton Police subsequently conducted seven to ten additional warrantless searches of the Piccones' home." (Dkt. No. 1, Compl. ¶ 133.)

On January 29, 2008, DCF shared information with the Dalton Police and the Berkshire County District Attorney's Office, and Defendant Bartels applied for and received criminal complaints and arrest warrants against Plaintiffs. The complaints alleged custodial interference by relatives pursuant to Mass. Gen. Laws ch. 265, § 26A ("Section 26A").

On February 1, 2008, Defendant Chief of Police Bartels again went to Plaintiffs' home. Plaintiff's sister and her boyfriend arrived and informed Defendant Bartels that he did not have permission to be on the property or to remove anything from the property. Despite this prohibition, and without a warrant, Defendant Bartels seized several black plastic bags that were on the property.

On February 6, 2008, DCF completed its investigation of the Piccones and concluded that there was insufficient evidence to make a finding of abuse or neglect based upon any of the original allegations. However, in their written report, Nietsche and Rice concluded that allegations of neglect

against the Piccones were supported because the Piccones had allegedly failed to make the children available to DCF for an interview.

At some point between January 15 and February 12, 2008, Mr. Piccone traveled to Europe. On February 12, 2008, he arrived at Logan International Airport from Paris, France. He was taken into custody at the airport and held by federal Immigration and Customs Enforcement ("ICE") agents, who contacted Defendant Bartels. On February 15, 2008, Mr. Piccone was transported to the Berkshire County Jail and House of Correction. His luggage remained at Logan Airport.

On February 29, 2008, Defendant Richard Smith, a Massachusetts State Police detective, traveled to Boston to take custody of a piece of luggage that Plaintiff had brought with him when he arrived at Logan International Airport on February 12. On or about March 13, 2008, Defendant Bartels applied for and received a search warrant and searched Plaintiff's luggage.

### III. DISCUSSION.

In Counts 21–28, Plaintiffs allege that the DCF Defendants violated their right to substantive and procedural due process guaranteed under the Fourteenth Amendment of the United States Constitution and under Articles 1 and 10 of the Massachusetts Declaration of Rights. (Dkt. No. 1.) In Count 29, Plaintiffs also argue that, by instituting proceedings against them, the DCF Defendants committed the common-law tort of abuse of process. (Id.) The DCF Defendants move to dismiss these counts. (Dkt. No. 8.)

In Counts 1, 3, 5, 9, 11, 13, and 15, Plaintiffs allege that Defendants Bartels and Marley violated Plaintiffs' rights as guaranteed under the Fourth Amendment to the Constitution of the United States by (1) conducting warrantless searches and

seizures, and (2) using materially misleading affidavits in order to obtain search warrants for Plaintiff's luggage, passport, and e-mail accounts. In Count 17, Plaintiffs allege that Defendant Town of Dalton is liable on a *Monell* theory for any constitutional violation committed by Defendant Bartels. *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In Count 19, Plaintiff alleges that he was falsely arrested by Defendant Bartels. In Count 20, Plaintiffs allege that Defendant Bartels committed the tort of malicious prosecution by bringing against Plaintiffs a criminal complaint alleging violations of Section 26A. The Dalton Defendants move to dismiss these counts. (Dkt. No. 18.)

In Count 7, Plaintiffs allege that Defendant State Trooper Smith violated Plaintiffs' Fourth Amendment rights when he took custody of Plaintiff's luggage at the airport. Defendant Smith moves to dismiss this count.

Counts 2, 4, 6, 8, 10, 12, 14, 16, and 18 will be dismissed by mutual assent of the parties.

### A. *The DCF Defendants' Motion to Dismiss (Dkt. No. 8)*

Plaintiffs allege that by unjustifiably removing the children from their parents' "care, custody, and control," the DCF Defendants violated their right to substantive and procedural due process guaranteed under the Fourteenth Amendment to the Constitution of the United States and under Articles 1 and 10 of the Massachusetts Declaration of Rights. (Dkt. No. 1 ¶¶ 311 et *passim.*) Pursuant to 42 U.S.C. § 1983 ("Section 1983") and Mass. Gen. Laws ch. 12, § 11I ("Section 11I"), they seek damages from Defendants Reber, Mazzeo, Nietsche, Woods, LaPointe, and Rice. Plaintiffs also seek to have the record of

the neglect finding expunged. (Dkt. No. 1 at 55.) This request for injunctive relief is directed at Defendant McClain, the Commissioner of DCF, from whom Plaintiffs do not seek damages.

The DCF Defendants argue that, as state employees engaged in a discretionary function and acting in their official capacities, they are entitled to qualified immunity from actions for damages. They also argue that no unconstitutional deprivation of a protected interest occurred and that the alleged conduct is not actionable under Section 11I.

1. *Section 1983 Claims (Counts 21, 23, 25, 27)*

The DCF Defendants argue that all counts against them should be dismissed because they enjoy both absolute and qualified immunity from damages. Because the court will find that qualified immunity applies, this memorandum will not reach the issue of absolute immunity.

■ The First Circuit has a two-part test for determining entitlement to qualified immunity. A court must determine (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir.P.R.2009). A right is clearly established if "the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.* This inquiry involves both a legal and a factual component. For the right at issue to be clearly established, the state of the law must be clear and the facts must clearly implicate the right at issue.

With respect to Defendants Reber and Mazzeo, the federal counts (Counts 21, 23, 25, and 27) will be dismissed. Their participation in the events at hand was limited to making, filing, and reviewing an arguably flawed intake report. The court cannot find that they infringed any "clearly established" constitutional right by doing so.

■ With respect to the other DCF Defendants, the federal counts will be dismissed because there was no deprivation of a protected interest; in other words, there was simply no violation of a constitutional right as required by the first prong of *Maldonado's* qualified immunity analysis. The protected liberty interest identified here, with respect to both substantive and procedural due process claims, is the interest of parents in the care, custody, and control of their children. *See Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12 (1st Cir.2001) (interest of parents in the care, custody, and control of their children is a protected liberty interest). The gravamen of Plaintiffs' complaint is that the state attempted to gain physical custody of the children but was ultimately thwarted in that attempt.

Plaintiffs have offered no authority, and this court is aware of none, for the proposition that a deprivation of the parents' interest in the "care, custody, and control" of children may occur when the state is thwarted—that is, when the parents experience no interruption in physical custody because the state is unable or unwilling to physically remove the children from their care.

The complaint itself confirms that the Piccone children remained in their mother's care throughout DCF's investigation. Mrs. Piccone therefore experienced no deprivation of custody, unconstitutional or otherwise. Mr. Piccone chose to remove himself from the companionship of his family on January 11, 2008, in response to the investigator's insistence that he permit an

interview of his child without videotaping or, alternatively, agree to leave the house over the weekend. Obviously, a condition of that kind is not equivalent to taking a child away from a parent. In sum, as distressing as the situation may have been, he suffered no unconstitutional deprivation of his right to the care and custody of his children.

For these reasons, the court will dismiss Counts 21, 23, 25, and 27 in their entirety and against all Defendants.

### 2. Section 11I Claims (Counts 22, 24, 26, 28)

■ To establish a claim under Mass. Gen. Laws ch. 12, § 11I, a plaintiff must prove a deprivation or attempted deprivation of a protected right by "threats, intimidation or coercion." *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 668 N.E.2d 333, 337 (1996). Plaintiffs allege that, upon being notified of potential child abuse, DCF workers stated that they would attempt to remove the child from his father's care if he did not permit an interview to take place without videotaping. Plaintiffs argue that this "threat" is actionable under Section 11I.

■ In general, the stated intention to bring lawful process is not coercive for purposes of Section 11I. *See Stephens v. Exec. Office of Health & Human Servs.*, No. 01–P–903, 57 Mass.App.Ct. 1114, 785 N.E.2d 427 (table), 2003 WL 1477786, at *3 (Mass.App.Ct. March 24, 2003) ("It is not an improper threat for a State official merely to express an intention to bring a petition under G.L. c. 119, § 24, to obtain custody of a child if, in the official's judgment, such a petition is warranted."). Lawful process may become intimidating or coercive if undertaken in an intimidating way. *Reproductive Rights Network v. President of the Univ. of Mass.*, 45 Mass. App.Ct. 495, 699 N.E.2d 829, 839–40 (1998)

(finding university's use of uniformed police officers to close a building and thereby cancel a political meeting coercive). However, there are no indicia of intimidation here. The DCF investigators merely insisted on an opportunity to interview the child, following a reported allegation of abuse, without videotaping. Plaintiffs' situation might raise concerns, but the facts alleged are simply insufficient to provide grounds for Section 11I liability.

### 3. Defendant McClain.

Plaintiffs also request an injunction ordering Defendant McClain to cause DCF to expunge certain records. (Dkt. No. 1, Compl. p. 55, ¶ E.) Because the court finds that the DCF Defendants did not effect the deprivation of any protected right, there is no basis on which the requested injunctive relief could be ordered.

### 4. Abuse of Process Claims (Count 29)

■ Plaintiffs argue that, by instituting proceedings against them, Defendants committed the common-law tort of abuse of process. To prevail on this claim, Plaintiffs must show that Defendants used the process "to accomplish some ulterior purpose for which it was not designed or intended." *Interface, Inc. v. Computerworld Inc.*, 396 Mass. 760, 489 N.E.2d 185, 195 (1986). The essential elements of abuse of process are "(1) 'process' was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Id. See also Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 772 N.E.2d 552, 563 (2002). Defendants argue that Plaintiffs have failed to allege cognizable ulterior or illegitimate purpose.

Plaintiffs argue that they have alleged a retaliatory purpose stemming from Plaintiff's work assisting in the defense of a day care center in Pittsfield and his stated intention to file suit against DCF. The

cited portion of the complaint provides as follows: (1) that Plaintiff began assisting another attorney to defend a certain day care center against allegations of child neglect made by the Massachusetts Department of Early Education and Care (the "EEC"); (2) that Defendant DCF receives and investigates reports from the EEC; (3) that Plaintiff informed the general counsel of the EEC that the lawsuit would challenge the constitutionality of Mass. Gen. Laws. ch. 119, §§ 51A and 51B, under which both DCF and the EEC operate; and (4) that the call alleging abuse of Plaintiff's son was made one week later. (Dkt. No. 1, Compl. ¶¶ 22–25.)

■ Plaintiffs argue that these allegations "imply that DCF was retaliating against [Plaintiff] in an effort to intimidate him to refrain from suing them." (Dkt. No. 40 at 23.) The claim of alleged causation offered in the complaint is simply too tenuous to avoid dismissal. In essence, the complaint charges that the employees of one agency initiated a child-neglect investigation because an attorney had expressed his intention to lend his assistance to another attorney's defense of another party accused by a separate, independent agency. The only allegation offered in support of this claim is that the first agency began its investigation a week after learning of the attorney's involvement in the separate lawsuit involving the second agency. As noted, the chain of causation is simply too attenuated and unsupported to ground a claim of ulterior purpose. Count 29 will therefore be dismissed.

B. *The Dalton Defendants' Motion to Dismiss (Dkt. No. 18)*

Plaintiffs allege that the Dalton Defendants violated Plaintiffs' rights as guaranteed under the Fourth Amendment to the Constitution of the United States by (1) conducting warrantless searches and seizures and (2) using materially misleading affidavits in order to obtain search warrants for Plaintiff's luggage, passport, and e-mail accounts. Plaintiffs also allege that the Town of Dalton is liable on a *Monell* theory for any constitutional violation(s) committed by Defendant Bartels. *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs seek damages pursuant to Section 1983.[2]

The court will find that the claims based on the warrantless searches are actionable and will deny the Dalton Defendants' motion to dismiss with respect to such claims. Likewise, the court will not dismiss the malicious prosecution claim. However, the court will dismiss the false arrest claim and all claims arising from the searches made pursuant to a valid warrant.

1. *Liability of Defendants Bartels and Marley for Warrantless Searches (Counts 1, 3, 5).*

Plaintiffs allege that on January 25 and 27, 2008, Defendant Police Chief Bartels and Defendant Police Officer Marley entered and searched Plaintiffs' home without a warrant and without consent. Plaintiffs also allege that, on February 1, 2008, Defendant Bartels removed black plastic bags containing unknown items from Plaintiffs' property without a warrant and without permission. Defendants argue that the officers in question are entitled to qualified immunity for any liability otherwise arising from their actions.

■ With respect to the first search (Count 1), Defendants argue that Defen-

**2.** Plaintiffs no longer seek damages from the Dalton Defendants pursuant to Section 11I.

*See* footnote 1, above.

dant Bartels enjoys qualified immunity for his actions because there was an outstanding *capias* warrant for Plaintiff and the law prohibiting a search in such circumstances was not "clearly established" as required in *Maldonado*, 568 F.3d at 269. For their argument that the law on this issue was unsettled at the time of the search, Defendants cite *Malek v. Knightly*, No. 94–2113, 56 F.3d 59, 1995 WL 338178, 1995 U.S.App. LEXIS 13924 (1st Cir.1995). In *Malek*, the First Circuit declined to determine "whether a bench warrant for civil contempt authorizes entry into the arrestee's home to effect the arrest." *Id.* at *2, 1995 U.S.App. LEXIS 13924 at *2. From this, Defendants argue that Defendant Bartels was conducting himself in an uncertain area of the law defining whether the *capias* entitled him to enter and search the Piccones' home. However, Defendants cite no case (and this court is aware of none) indicating that a *capias* warrant gives the government the right to enter the arrestee's home for any other purposes than to effect the arrest. Whatever he may have thought about his authority to enter the home and effect an arrest, the law clearly prohibited Defendant Bartels from conducting a warrantless search. Accordingly, he does not enjoy the protections of qualified immunity with respect to Count 1.

■ With respect to the second search (Count 3), Defendants argue that an individual plausibly identifying himself as Plaintiff's brother-in-law consented to the search, which was therefore lawful under the "apparent authority" rationale. *Illinois v. Rodriguez*, 497 U.S. 177, 186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (holding that there is no violation of the Fourth Amendment when the government reasonably believed that the individual giving consent to the search had authority to do so) (citing *United States v. Matlock*, 415 U.S.

164, 172, 94 S.Ct. 988, 39 L.Ed.2d 242 (U.S.1974) (holding that a third party has authority to consent to a search if the third party is a "co-inhabitant")). *See also U.S. v. Romain*, 393 F.3d 63, 69, n. 2 (1st Cir.2004) (apparent authority to consent to a search is sufficient if the officer's reliance on the apparent consent is reasonable). In this case, Defendant Bartels appears to have assumed that, if an individual was the property owner's brother-in-law, the individual was a co-inhabitant or exercised similar control over the premises. Defendants do not explain how this assumption was reasonable and, at this early stage of the case, no conclusions may be drawn on this point. Count 3 will not be dismissed.

With respect to the third search (Count 5), Defendants note that the government may search garbage within the curtilage of a home. *U.S. v. Scott*, 975 F.2d 927 (1st Cir.1992). Defendants argue that this count should be dismissed because Plaintiffs have failed to allege that the plastic bags in question were not garbage bags located within the curtilage of Plaintiffs' home. Plaintiffs are not required to anticipate potential defenses in their complaint. These facts may be explored in discovery. Count 5 will not be dismissed.

2. *Liability of Defendant Bartels for Searches Pursuant to Allegedly Invalid Warrants (Counts 9, 11, 13, and 15)*

■ Plaintiffs allege that Defendant Bartels used intentionally misleading affidavits in order to obtain search warrants for Plaintiff's luggage, passport, and email accounts. A warrant that issues without probable cause is invalid, and, as a matter of law, a warrant containing misinformation is invalid if the misinformation was necessary to establish probable cause. *Aponte Matos v. Toledo Davila*, 135 F.3d

182, 187 (1st Cir.1998) (citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)).

Plaintiffs allege that the affidavits contain numerous misstatements and material omissions. For example, with respect to the affidavit's statement that the Piccones' house was in disarray, Plaintiffs allege that "in fact it was clean and neat." (Dkt. No. 1, Compl. ¶ 174.) Similarly, Plaintiffs allege that the affidavits misrepresented the basis for the DCF's finding of neglect. However, none of the alleged misrepresentations or omissions was material to the finding of probable cause. The warrant was therefore valid, and Counts 9, 11, 13, and 15 will therefore be dismissed.

3. *Liability of Defendant Town of Dalton for Actions by Defendant Bartels (Count 17).*

■ Plaintiffs allege that Defendant Town of Dalton is liable for harm resulting from any unconstitutional searches committed by Defendant Chief of Police Bartels. Municipal liability may be imposed "for a single decision by municipal policymakers under appropriate circumstances." *Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir.2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Such liability attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481, 106 S.Ct. 1292. Plaintiffs argue that *Monell* liability attaches because Defendant Bartels, as Chief of Police for the Town of Dalton, had final decision-making authority with respect to the searches at issue.

Defendants argue that, because Bartels was acting as a police officer rather than in his decision-making capacity as police chief, any alleged constitutional violations cannot result in the imposition of liability

on the municipality. This argument is not persuasive. Regardless of how Defendant Bartels understood his function when he entered Plaintiffs' house, the fact remains that he was the Town of Dalton's final word on the scope of Plaintiffs' Fourth Amendment rights. Plaintiffs are free to argue that he retained that authority whether he was investigating crime himself or supervising subordinate officers. Since his actions may trigger *Monell* liability, Count 17 cannot be dismissed. Plaintiffs, at a minimum, are entitled to develop their case through discovery.

4. *Malicious Prosecution (Count 19)*

■ Both Plaintiffs assert malicious prosecution claims against Defendant Bartels for his role in bringing criminal complaints against them. The elements of malicious prosecution are "(1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 772 N.E.2d 552, 561 (2002). Defendants do not contest that Plaintiffs have adequately pleaded the first and third elements of the tort. They argue that the claim should be dismissed because (1) Defendant Bartels had probable cause to initiate proceedings against the Piccones and (2) Plaintiff is collaterally estopped from disputing the probable cause issue because the Massachusetts District Court of Pittsfield found that probable cause existed to bring the complaint.

a. *Probable Cause.*

Defendants argue that the malicious-prosecution claim must be dismissed because Defendant Bartels had probable cause to seek the criminal complaint. Section 26A criminalizes "[holding] or [intend-

ing] to hold . . . a child permanently or for a protracted period" without lawful authority and "[taking] or [enticing] such a child from his lawful custodian." Mass. Gen. Laws ch. 265, § 26A. Defendant Bartels had probable cause to bring the complaint under Section 26A if he reasonably believed that Plaintiffs had taken or were holding the children without lawful authority.

■ The face of the complaint confirms that probable cause to charge Mrs. Piccone existed at the time the criminal complaint issued. Of course, the act of "taking" the children to New York before DCF sought custody was insufficient grounds for the charge. A parent does not commit custodial interference by taking exclusive possession of a child where no custody order has issued. See Commonwealth v. Beals, 405 Mass. 550, 541 N.E.2d 1011, 1013 (1989). Likewise, a parent does not commit custodial interference by holding a child in violation of a custody order of which he or she has no actual notice. Id. at 1012 (noting that the defendant had no knowledge of the custody order when she continued to hold her children in Puerto Rico). However, if Defendant Bartels had reasonable cause to believe that Mrs. Piccone was holding the children in New York in knowing violation of a custody order, then he had probable cause to charge her, even if the order issued after she first took the children to New York.

■ At the time he sought the complaint, Defendant Bartels knew that Mrs. Piccone was in New York with the children. To conclude that she knew about (and was intentionally flouting) the custody order, he merely had to assume that she was in communication with her husband, who was himself aware of the order. These are reasonable assumptions. Plaintiffs were not estranged or engaged in a dispute over the children, and a husband would ordinarily tell his wife important

information of that nature. Defendant Bartels may have drawn a mistaken conclusion, but he had probable cause to draw the conclusion he did.

■ The arrest and prosecution of Plaintiff is another matter. Section 26A criminalizes holding or taking children from their lawful custodian. In support of their motion to dismiss, Defendants do not explain how Defendant Bartels concluded that, during the relevant period, Plaintiff had physical access to his children, much less the physical control necessary to "hold" or "take" them. According to the complaint, Defendant Bartels knew that the children were in New York while Plaintiff was in Massachusetts. On these facts, the claim that Defendant Bartels lacked probable cause to make a criminal complaint is at least facially cognizable.

b. *Collateral Estoppel.*

■ For issue preclusion to apply, three elements must be met: (1) the issue must be actually litigated, (2) there must be a full and final judgment, and (3) the determination must be essential to the judgment. A judgment is not "final" for this purpose unless it can be appealed. *Jarosz v. Palmer*, 436 Mass. 526, 766 N.E.2d 482, 486 (2002).

The Massachusetts District Court dismissed the criminal complaint against the Piccones on their motion to reconsider, finding that the Commonwealth would be unable to meet its burden of proof. (Dkt. No. 20, Ex. B, December 22, 2008, Mem. of Decision and Order on Def.'s Mot. to Dismiss in *Commonwealth v. Louis A. Piccone*, Pittsfield District Court Docket No. 0827CR215.) Before dismissing the complaint, however, the court found that Defendant Bartels had probable cause to initiate the proceedings against both parents. (Dkt. No. 20, Ex. A, July 25, 2008, Mem. of

Decision and Order on Def.'s Mot. to Dismiss in *Commonwealth v. Louis A. Piccone,* Pittsfield District Court Docket No. 0827CR215.) That specific factual finding was never reversed or overruled, and Defendants argue that it precludes Plaintiffs from claiming here that the charges were brought without probable cause.

■■■ This argument is unpersuasive because, in this case, the July 25, 2008 decision never became appealable. A Massachusetts District Court's decision not to dismiss a criminal complaint is not appealable unless the defendant is ultimately convicted. *Jackson v. Commonwealth,* 437 Mass. 1008, 770 N.E.2d 469, 470 (2002). In addition, the determination regarding probable cause was not essential to the judgment dismissing the case. For these reasons, the malicious prosecution claim brought by Mr. Piccone cannot be dismissed on the ground of issue preclusion.

For the foregoing reasons, Count 19 will be dismissed with respect to Mrs. Piccone but not with respect to Mr. Piccone.

### 5. *False Arrest (Count 20)*

■■■ Plaintiff has alleged that his arrest on February 12, 2008, constituted a false arrest for which Defendant Bartels is liable under Section 1983. If an arrest is made pursuant to a warrant that appears proper and valid on its face, the officer making the arrest is permitted to rely on the warrant. *See Massachusetts Practice* § 10.9 (2009). *See also Lombard v. Salisbury Police Dep't,* 4 Mass. L. Rep. 255, 1995 WL 1146874, at *3, 1995 Mass.Super. LEXIS 411, at *9 (Mass.Super.Ct.1995) ("An arrest or confinement warranted by law cannot constitute the tort of false imprisonment or false arrest."). Defendant

Bartels acted pursuant to a valid warrant. Count 20 will therefore be dismissed.

### C. *Defendant Smith's Motion to Dismiss Count 7 (Dkt. No. 15)* [3]

It is uncontested that on February 29, 2008, Defendant State Trooper Smith took custody of Plaintiff's luggage, which had remained at the airport following his February 12 arrest. (Dkt. No. 1, Compl. ¶ 169.) Plaintiffs allege that, by doing so, Defendant Smith violated Plaintiff's rights as guaranteed under the Fourth Amendment to the Constitution of the United States.

Defendant Smith argues that any seizure of Plaintiff's bags occurred weeks earlier, when Federal Immigration and Custom Enforcement ("ICE") agents took possession of the luggage incident to Plaintiff's arrest. (Dkt. No. 16, Defendant Richard Smith's Mem. of Law in Supp. of Mot. to Dismiss 10.) He therefore contends that either (1) his act did not constitute a civil rights violation because another government agent had already seized the bags or (2) he enjoys qualified immunity because he reasonably believed that the bags were already in possession of government agents.

With respect to the first argument, the only evidence currently before the court regarding the chain of custody of Plaintiff's luggage consists of an affidavit by Defendant Bartels (the "Bartels Declaration"), which he submitted in support of a search warrant. (Dkt. No. 16, Ex. 1.) The Bartels Declaration lays out the following facts: (1) Plaintiff was arrested on February 12, 2008 (*Id.* ¶ 9); (2) on February 13, 2008, the luggage in question was in a location called "Troop F barracks" of Logan airport (*Id.* ¶ 13); (3) on February 13, 2008, ICE Agents and Massachusetts

---

**3.** Plaintiffs do not contest Defendant Smith's motion to dismiss Count 8, the Section 11I

claim associated with the same conduct. *See* footnote 1, above.

State Troopers searched the luggage without a warrant (*Id.*); (4) on February 29, 2008, Defendant Smith took possession of the luggage on behalf of the Commonwealth; and (5) the luggage "had been secured at the time of [Plaintiff's] arrest" (*Id.* ¶ 14). The Bartels Declaration does not clearly identify who had possession of the luggage during the critical period between the February 12 arrest and the February 29 seizure.

With respect to the second argument asserting qualified immunity, Defendant Smith has not submitted *any* evidence as to his understanding of the custody of the luggage on February 29, 2008. There is no declaration from Defendant Smith, and the Bartels Declaration is silent as to Defendant Smith's beliefs.

 Admittedly, Defendant Smith's position is sympathetic. It appears quite possible that he merely transported an item already seized by another party. Any damage suffered as a result of this action is difficult to discern. Nevertheless, at this stage, before discovery has taken place, the court cannot dismiss the complaint on the basis of the moving party's attorney proffer. There is not enough evidence for the court to conclude either that ICE had possession of the bags on February 29, 2008, or that Defendant Smith believed that the bags had already been seized. Accordingly, Count 7 will not be dismissed.

### IV. *CONCLUSION.*

For the foregoing reasons, the DCF Defendants' Motion to Dismiss Counts 21–29 (Dkt. No. 8) is hereby ALLOWED. This ruling eliminates the DCF Defendants from the case entirely.

The Dalton Defendants' Motion to Dismiss Counts 1–6 and 9–20 (Dkt. No. 18) is hereby ALLOWED with respect to Counts 2, 4, 6, 9–16, 18, and 20. It is DENIED with respect to Counts 1, 3, 5, and 17. It is ALLOWED, in part, and DENIED, in part, with respect to Count 19.

Defendant Smith's Motion to Dismiss (Dkt. No. 15) is hereby ALLOWED as to Count 8 but DENIED as to Count 7.

This case is hereby referred to Magistrate Judge Kenneth P. Neiman for a pre-trial scheduling conference.

It is So Ordered.