Lu, John T., J.
INTRODUCTION
The defendant, Ernesto Gonzalez (Mr. Gonzalez), is charged with misleading the grand jury under G.L.c. 268, §13B(l)(c)(iii) and parental kidnapping of a minor under G.L.c. 265, §26A. Mr. Gonzalez now brings a Mass.R.Crim.P. 13 and Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982), motion to dismiss the kidnapping indictment because the alleged victim was his son, G.G.[1] Relying on Commonwealth v. Beals, 405 Mass. 550, 553-56 (1989), Mr. Gonzalez argues that absent a court order denying him custody, the indictment for kidnapping his son cannot stand.
The Commonwealth concedes that Mr. Gonzalez was G.G.’s father. Nonetheless, it maintains that under G.L.c. 209C, §10(b) Mr. Gonzalez did not have custody and therefore his parental kidnapping indictment is proper. While the court finds that this statute, if applied, would deprive Mr. Gonzalez of custody, it also finds that this application is unconstitutional under the Massachusetts Declaration of Rights because it discriminates on the basis of gender without narrowly furthering a compelling governmental interest. Because the statute cannot constitutionally apply to Mr. Gonzalez, he had lawful authority over G.G., and his motion to dismiss must be allowed.
BACKGROUND
Viewed in the light most favorable to the Commonwealth, the grand jury could reasonably have found the following generally undisputed facts. See Commonwealth v. Caracciola, 409 Mass. 648, 649 n.1 (1991).
Daisy Colon (Ms. Colon) gave birth to G.G. in 2003 and testified to the grand juiy that Mr. Gonzalez was the father. Although Ms. Colon and Mr. Gonzalez were never married, they lived together until G.G. was about two years old.
In the years following their separation, Mr. Gonzalez had a sporadic relationship with G.G., and at one point they went almost a year without contact. The grand jury heard testimony that Mr. Gonzalez acknowledged paternity and paid some child support. In June of 2008, Mr. Gonzalez filed for joint custody and/or visitation of G.G. in the Probate and Family Court. The court never issued an order regarding either.
Before August of2008, Mr. Gonzalez started to take more of an interest in his son and he informally arranged periodic weekend visits. On Friday August 15,2008, Ms. Colon dropped G.G. off at Mr. Gonzalez’s Lynn apartment for the weekend. Ms. Colon and Mr. Gonzalez agreed that she would retrieve him at 4:00 P.M. on Sunday, August 17. Ms. Colon arrived at the scheduled time to pick up G.G., but neither he nor Mr. Gonzalez could be found. After spending several hours attempting to locate them, Ms. Colon called the Lynn police. Eventually fire department personnel entered the apartment through a window and found Mr. Gonzalez locked in a bathroom. Mr. Gonzalez maintained that G.G. had not been with him that weekend. The grand jury heard from witnesses who saw Mr. Gonzalez and G.G. together on Saturday, August 16. G.G. has not been found.
DISCUSSION
I. Standard
To obtain an indictment, the Commonwealth must present the grand jury with sufficient evidence to establish “the identity of the accused ... and probable cause to arrest him” for the crimes charged. McCarthy, 385 Mass. at 163. “(Pjrobable cause [to arrest] exists where ... the facts and circumstances ... are enough to warrant a prudent person in believing that the individual arrested has committed ... an offense.” Commonwealth v. Galant, 453 Mass. 535, 541 (2009) (alteration in original), citing Commonwealth v. Storey, 378 Mass. 312, 321 (1979). The grand jury must hear evidence on each element of the charged crime, or the *378 indictment cannot stand. Commonwealth v. Moran, 453 Mass. 880, 884 (2009).
II. Mr. Gonzalez’s Lawful Authority Over G.G.
An indictment for kidnapping by a family member under G.L.c. 265, §26A can issue when a grand jury has heard evidence that “ [ 1 ] a relative of [2] a child less than eighteen years old, [3] without lawful authority, [4] holds or intends to hold such a child permanently or for a protracted period.” At issue is whether the grand jury heard evidence that Mr. Gonzalez lacked lawful authority to hold G.G.
In Commonwealth v. Beals, the Supreme Judicial Court addressed “whether the phrase ‘without lawful authority’ . . . includes the action of a parent who takes his or her children from the other parent prior to a court proceeding.” 405 Mass. at 552. The court held that a parent cannot kidnap his or her own child under this statute absent “a custody order altering his or her natural custody rights.” Id. at 553.
Relying on G.L.c. 209C, § 10(b), the Commonwealth argues that because G.G. was bom out of wedlock, Mr. Gonzalez never had any custody rights. This statute provides that “(p]rior to or in the absence of an adjudication or voluntary acknowledgment of paternity, the mother shall have custody of a child bom out of wedlock.” Id. Because Mr. Gonzalez was never adjudicated G.G.’s father, the Commonwealth maintains that Ms. Colon, alone, had custody.[2]
In analyzing G.L.c. 209C, § 10(b) in a non-criminal context, the Supreme Judicial Court limited the statute’s reach. “Absent an adjudication of custody to the contrary, a parent. . . living in the home with his minor children and supporting those children, is a custodial parent.” Department of Revenue v. C.M.J., 432 Mass. 69, 77 (2000). As the court recognized, “resolution of custody questions ‘necessarily begin[ ] with the premise that parents have a natural right to the custody of their children.’ ” Id. at 76, quoting Petition of the Dep’t of Pub. Welfare to Dispense with Consent to Adoption, 383 Mass. 573, 587 (1981); see also Stanley v. Illinois, 405 U.S. 645, 651 (1972) (describing the parental right to “companionship, care, custody, and management of his or her children”). The court also found relevant that § 10(b) does not “state that an adjudicated father shall not have custody in the absence of such an order or judgment, nor does it employ the term ‘noncustodial’ or apply this term to the father.” C.M.J., 432 Mass. at 77.
The holding in C.M.J. does not apply to the facts here. While that father lived with and provided for his children, Mr. Gonzalez had only a sporadic relationship, at best, with his son. G.G. lived with his mother, and she, effectively, maintained sole custody. This conclusion is compelled by § 10(b), especially when the statute is read in light of the surrounding subsections. Section 10(a) states that “(u]pon or after an adjudication or voluntary acknowledgment of paternity, the court may award custody to the mother or the father or to them jointly or to another suitable person as hereafter further specified as may be appropriate in the best interests of the child.” The Legislature was able to distinguish between custody for one parent and joint custody. In enacting § 10(b), the Legislature awarded default custody to a mother, unless a court ordered otherwise.
Applying § 10(b) to the facts at hand requires the conclusion that Mr. Gonzalez did not have custody of G.G. at the time of his disappearance. If § 10(b) were to apply, the Commonwealth could maintain this indictment. This situation would be distinguishable from Beals. There the defendant had custody of her child and no court order affected that. Here, because G.G. was bom out of wedlock and no court awarded Mr. Gonzalez custody, under the statutory scheme, he would be considered a non-custodial parent.
III. Constitutionality of G.L.c. 209C, § 10(b)
This however, does not end the inquiry. Mr. Gonzalez claims that reading G.L.c. 209C, §10(b) to deny him custody of G.G. would be unconstitutional because it discriminates on the basis of gender—mothers are given custody because they are mothers, and fathers are not deemed to have custody because they are fathers.[3]
A. Preliminary Issues
Before reaching the merits of Mr. Gonzalez’s argument, the Commonwealth maintains that this is an improper forum to challenge the constitutionality of G.L.c. 209C, §10(b). It argues that the only proper approach would have been through a petition for custody in the Probate and Family Court. In support of this position, the Commonwealth relies on a number of cases where a conviction that rested on violation of a court order or similar authoritative decree was upheld even if the underlying directive was unconstitutional or otherwise improper. E.g., Commonwealth v. Wallace, 431 Mass. 705, 707 (2000) (declining to address the constitutionality of an injunction issued in one matter in a separate criminal proceeding initiated for violating it); Commonwealth v. Moreira, 388 Mass. 596, 601 (1983) (generally “a person may not use force to resist an arrest by one who he knows . . . is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances”); Commonwealth v. Laskowski, 40 Mass.App.Ct. 480, 482 (1996), F.A.R. denied, 423 Mass. 1101 (1996) (rejecting a challenge to a “no contact” order in a criminal proceeding for violating it).
These cases are distinguishable. In all of them, a defendant was convicted of refusing to follow an order of one form or another. In Wallace, the Supreme Judicial Court refused to allow a challenge of a contempt order because such convictions “vindicate the authority of the court, and they survive the reversal of an erroneous court decree.” Wallace, 431 Mass. at 707. Once a judge has issued an order, an individual *379 is not free to ignore it. He can appeal that ruling, but cannot violate it.
This is a different situation. Here, Mr. Gonzalez is accused of parental kidnapping; this indictment requires demonstrating that he lacked lawful authority over his son. There was no court order depriving him of lawful authority, but merely a statute whose reach had already been limited by the Supreme Judicial Court. See C.M.J., 432 Mass. at 77. Section 10(b) poses particular practical difficulties; it forces unmarried fathers who participate in their children’s lives to seek court orders establishing their custody. Id. at 79. It is understandable and appropriate that a father would not confront this statute until after a dispute arose. This is a proper forum for Mr. Gonzalez to challenge §10(b)’s application to him.[4]
B. Discrimination on the Basis of Gender
Article 1 of the Declaration of Rights of the Massachusetts Constitution, as amended by Article 106, states that “[e]quality under the law shall not be denied or abridged because of sex.”[5]
Classifications on the basis of gender are subject to strict scrutiny under the Massachusetts Declaration of Rights, even though they are subject to lesser “intermediate” scrutiny under federal law. Commonwealth v. Chou, 433 Mass. 229, 237 n.6 (2001). This means that such a classification will only be upheld if it “further[s] a demonstrably compelling interest and limit[s] [its] impact as narrowly as possible consistent with [its] legitimate purpose.” Attorney Gen. v. Massachusetts Interscholastic Athletic Ass’n, Inc., 378 Mass. 342, 354 (1979), citing Commonwealth v. King, 374 Mass. 5, 21 (1977) (enforcement of a prostitution statute against women but not men is unconstitutional).
Here, the Commonwealth maintains that this statute survives strict scrutiny. It does so relying on Commonwealth v. MacKenzie, 368 Mass. 613, 617 (1975), which addressed the question of whether a statute used to determine paternity and require unwed fathers, but not mothers, to contribute “toward pregnancy and childbirth expenses” was unconstitutional. The Supreme Judicial Court recognized “significant circumstantial differences between unwed fathers and unwed mothers.” Id. The court held that the provisions in question “rest on more than a sex-based classification. They reflect significant circumstantial differences between the fathers and the mothers of illegitimate children. Adapting the language of the Supreme Court in Schlesinger v. Ballard [419 U.S. 498,] 508 [(1975)], to these circumstances, we believe that ‘the different treatment of men and women . . . reflects, not archaic and overbroad generalizations, but, instead, the demonstrable fact that male and female . . . [parents of illegitimate children] are not similarly situated . . .’ ” Id. at 617-18 (final alteration in original).
MacKenzie, however, does not control the outcome of this case. In that case, gender was a “proxy for function." See Massachusetts Interscholastic Athletic Ass’n, Inc., 378 Mass. at 357. The Supreme Judicial Court upheld “the law designed to establish paternity and the obligation of child support because it reflected functional differences, biologically based, between males and females: childbearing renders obvious the identity of the mother, while the father may easily escape recognition.” Id. Section 10(b), as applied to this situation, does no more than make a custody determination on the basis of gender alone.
Awarding custody to one parent solely because she is the mother and denying it to another because he is not, constitutes discrimination on the basis of gender. Mr. Gonzalez’s situation is not one where paternity is unknown or questionable. He identified himself as G.G.’s father and Ms. Colon’s testimony confirmed his paternity. Even if this statute furthers the government’s supposedly compelling interest of establishing default custody determinations for children born out of wedlock, it is not narrowly tailored to that end. Instead it makes blanket determinations on the basis of gender and nothing more. The statute demonstrates no effort to narrowly tailor its effect on one gender or preference for the other; in fact gender is the only factor considered.
Mr. Gonzalez is G.G.’s father. The Commonwealth cannot rely on G.L.c. 209C, §10(b) to show that Mr. Gonzalez did not have lawful authority over G.G. Because the Commonwealth did not provide the grand juiy with evidence that Mr. Gonzalez was deprived of custody by court order, in light of Beals, as a parent who has not been deprived of custody of his son, he cannot be charged under G.L.c. 265, §26A with kidnapping his son, and his motion to dismiss must be allowed.[6]
ORDER
The defendant, Ernesto Gonzalez’s, motion to dismiss (paper #48) count 2, the parental kidnapping indictment, is ALLOWED.

In cases where the alleged victim is a minor, the court uses initials or a pseudonym in court papers. Cf. G.L.c. 265, §24C; Local Rules for the Federal District of Massachusetts, Rule 5.3(a)(2).

The grand jury heard testimony that Mr. Gonzalez acknowledged that G.G. was his son. It is unclear whether the term “acknowledgment” was used colloquially or technically. See G.L.c. 209C, §11 (describing the requirements for a legal acknowledgment of paternity). For purposes of this motion, the court assumes that the term was used colloquially.

Mr. Gonzalez also makes two other arguments. First, that § 10(b) abrogates his fundamental right to raise his son. C.M.J., 432 Mass. at 77; see also Troxel v. Granville, 530 U.S. 57, 65-66 (2000) (recounting a litany of Supreme Court cases describing the fundamental rights of parents to, among other things, make custody decisions about their children); Stanley v. Illinois, 405 U.S. 645, 651-58 (1972). Second, in light of Beals, the parental kidnapping statute is unconstitutionally vague. Because of this court’s holding that G.L.c. 209C, § 10(b) *380 unconstitutionally discriminates on the basis of gender, these arguments are moot.

Despite the Commonwealth’s contrary assertion, a motion under Mass.R.Crim.P. 13 is likewise the appropriate mechanism for this as-applied challenge. See Commonwealth v. Jasmin, 396 Mass. 653, 655 (1986) (“[A] challenge to the vagueness of a statute as applied might properly be raised before trial, but it need not be . . ."). The facts relevant for resolution of this issue are not in dispute.

he Supreme Judicial Court anticipated this issue as it relates to §10(b). C.M.J., 432 Mass. at 77 (‘To interpret the statute ... so as to presume that the mother, but not the father, shall have custody in such circumstances, would raise potential constitutional problems").

This court acknowledges that Commonwealth v. Todd, Memorandum and Order on Defendant’s Motion to Dismiss Indictments, No. 9977CR1147 (Mass.Super. Dec. 30, 1999) (van Gestel, J.), allowed an indictment for parental kidnapping to stand against an unwed biological father. The opinion did not discuss the constitutionality of G.L.c. 209C, § 10(b), but rather stated that “(h)ere we deal with a four-month-old baby, snatched away from her mother’s arms. Even a biological father, unwed to the mother, should not be able to do that in the absence of some appropriate court ruling establishing his right to physical custody."